## No. 80SA8

**Rueben F. Gardner and Pauline M. Gardner, Donald C. Dorrell and JoAnn Dorrell, Glenn E. McCormick and Beverly E. McCormick, Arthur James Estes and Shelia Rhae Estes, George R. Broughton and Vernice M. Broughton, Larry E. Loesch and Jackqueline L. Loesch, Okey D. Squires and Arlia M. Squires, Verner D. Mead and Elma M. Mead, Olive S. Johnson, Charles McAlary, William H. Haynes, and John Savage v. State of Colorado, Lee R. Enewold, Division Engineer, Water Division No. 5**

(614 P.2d 357)

Decided July 7, 1980.

Delaney & Balcomb, Kenneth Balcomb, for applicants-appellants.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, Dennis M. Montgomery, Assistant Attorney General, David Aschkinasi, Assistant, for appellees.

*En Banc.*

JUSTICE QUINN delivered the opinion of the Court.

This appeal raises the question whether the Water Right Determination and Administration Act of 1969 (Water Right Act), section 37-92-101 *et seq.*, C.R.S. 1973, permits the water judge, in connection with an application for a determination of abandonment filed under section 37-92-302(1)(a), C.R.S. 1973, to enter a decree that certain water rights of unknown persons have been abandoned, when the only notice of the application is its inclusion in the monthly resume published by the water clerk under section 37-92-302(3)(b), C.R.S. 1973 (1979 Supp.). The water judge determined that subsection (1)(a) of section 37-92-302, C.R.S. 1973, did not include within the resume-notice procedures an application for a determination of abandonment, and he dismissed the application. We affirm.

On June 18, 1978, Rueben F. Gardner, Pauline M. Gardner and eighteen others (Applicants) filed with the water clerk for Water Division No. 5 an application for a determination that certain water rights of unknown parties had been abandoned. The application alleged that no water had been diverted or applied to beneficial use for at least 50 years, and that the identity and location of the owners were unknown to the applicants. The water clerk included the application in the resume for June 1978 and caused publication of the resume pursuant to the resume provisions of section 37-92-302(3)(b), C.R.S. 1973 (1979 Supp.). No statement of opposition to the application was filed. The water referee then made an investigation of the application and ruled that the allegations were true and the application should be granted. The water judge suspended the ruling of the referee for the reason that an application for determination of abandonment was not within the resume-notice procedures of section 37-92-302, C.R.S. 1973. The water judge ordered the applicants to make efforts to identify the original owners or their successors in interest, serve

them with process pursuant to C.R.C.P. 4, and make them party defendants pursuant to C.R.C.P. 19. The applicants were directed to notify the court whether they wished to proceed in accordance with the court's order by September 30, 1979. The applicants elected to stand on their original application filed pursuant to section 39-92-302(1)(a), C.R.S. 1973, and the water judge then reversed the ruling of the referee and dismissed the application. The judgment of dismissal entered by the water judge constitutes the basis of this appeal. The division engineer was named as appellee pursuant to C.A.R. 1(e).

## I.

■ Proceedings under the Water Right Act, section 37-92-101 *et seq.*, C.R.S. 1973, are special statutory proceedings within the contemplation of C.R.C.P. 81(a), *Colorado River Water Conservation Dist. v. Rocky Mountain Power Co.,* 174 Colo. 309, 486 P.2d 438 (1971), *cert. denied,* 405 U.S. 996, 92 S.Ct. 1245, 31 L.Ed.2d 465 (1972), and along with the provisions of C.R.C.P. 4 dealing with service by publication, serve as a backdrop to the resolution of the issue raised by this appeal.

Section 37-92-302(1)(a), C.R.S. 1973, provides the statutory mechanism for filing applications with respect to water rights:

"Any person who desires a determination of a water right or a conditional water right and the amount and priority thereof, including a determination that a conditional water right has become a water right by reason of the completion of the appropriation, a determination with respect to a change of a water right, approval of a plan for augmentation, or quadrennial finding of reasonable diligence, shall file with the water clerk in quadruplicate a verified application setting forth facts supporting the ruling sought, a copy of which shall be sent by the water clerk to the state engineer and the division engineer."

Any person opposing the application may file a verified statement of opposition setting forth why the application should not be granted or why it should be granted only in part or on condition. Section 37-92-302(1)(b), C.R.S. 1973 (1979 Supp.).

■ Proceedings commenced under section 37-92-302(1)(a), C.R.S. 1973, are not subject to the service of process requirements of C.R.C.P. 4, but rather are handled through the unique resume-notice provisions of sub-section (3) of section 37-92-302, C.R.S. 1973 (1979 Supp.). Under these procedures the water clerk, not later than the fifteenth day of each month, prepares a resume of all applications filed in the water division during the preceding month. The resume must state the name and address of the applicant, a description of the water right involved, and a description of the ruling sought. A copy of the resume is mailed to each person who is likely to be affected by the application or who has requested a copy. The clerk is further directed to publish the resume or portion thereof "[n]ot later than the end of such month . . . in a newspaper or

newspapers as is necessary to obtain general circulation once in every county affected, as determined by the water judge." Section 37-92-302(3)(b), C.R.S. 1973 (1979 Supp.).

The water judge must refer all applications and statements of opposition filed under section 37-92-302 to a water referee. Section 37-92-203(7), C.R.S. 1973. After the resume is published the referee conducts an investigation to determine whether the statements in the application are true, and then rules on the application:[1]

"In accordance with procedures specified in this article, the referee in each division shall in the first instance have the authority and duty to rule upon determinations of water rights and conditional water rights and the amount and priority thereof, including a determination that a conditional water right has become a water right by reason of completion of the appropriation, determinations with respect to changes of water rights, plans for augmentation, approvals of reasonable diligence in the development of appropriations under conditional water rights, and determinations of abandonment of water rights or conditional water rights; and he may include in any ruling for a determination of water right or conditional water right any use or combination of uses, any diversion or combination of points or methods of diversion, and any place or alternate places of storage and may approve any change of water right as defined in this article." Section 37-92-301(2), C.R.S. 1973 (1979 Supp.).

The water judge may reverse any ruling by the referee which is contrary to law. Section 37-92-304(5), C.R.S. 1973.

In contrast to these resume-notice procedures, C.R.C.P. 4 sets forth procedures for accomplishing service upon persons in actions affecting specific property or in any proceeding *in rem*. C.R.C.P. 4(g)(1) authorizes service by mail upon a person whose identity and address are known:

"If the person to be served is without the state of Colorado, the party desiring service by mail shall file a motion verified by the oath of such party or of someone in his behalf for an order for service by mail. Such motion shall state the facts showing why such method of service is advisable, and the address of the person to be served. The court may, after hearing the motion ex parte, direct the clerk to send by registered or certified mail a copy of the process and a copy of the complaint, addressed to such person at such address, requesting a return receipt signed by addressee only. Such service shall be complete on the date of the filing of the clerk's proof thereof, together with such return receipt attached thereto signed by such addressee."

---

[1] Instead of ruling on the application, the referee may again refer the matter to the water judge. Section 37-92-303(2), C.R.S. 1973.

C.R.C.P. 4(h) provides for service by publication upon a person whose identity or address is unknown:

"The party desiring service of process by publication shall file a motion verified by the oath of such party or of someone in his behalf for an order of publication. It shall state the facts authorizing such service, and shall show the efforts, if any, that have been made to obtain personal service within this state and shall give the address, or last known address, of each person to be served or shall state that his address and last known address are unknown. The court shall hear the motion ex parte and, if satisfied that due diligence has been used to obtain personal service within this state or that efforts to obtain the same would have been to no avail, shall order publication of the process in a newspaper published in the county in which the action is pending. Such publication shall be made for four weeks. Within fifteen days after the order the clerk shall mail a copy of the process to each person whose address or last known address has been stated in the motion. Service shall be complete on the day of the last publication. If no newspaper is published in the county, the court shall designate one in some adjoining county."

## II.

The applicants argue that, contrary to the order of the water court in this case, the Water Right Act, section 37-92-101 *et seq.*, C.R.S. 1973, does permit the water judge to make a determination of abandonment under section 37-92-302(1)(a), when the application has been filed in accordance with the resume-notice procedures outlined in subsection (3) of section 37-92-302. We do,not agree. Under the Water Right Act, the types of applications the water judge may determine under the resume-notice procedure of section 37-92-302(3) are those applications expressly authorized to be filed under section 37-92-302(1)(a). The policies underlying the Water Right Act and the plain language of section 37-92-302(1)(a) dictate this result.

A water right is a legal right to use water; often, it is characterized as a property right. *E.g., Colo. Const.*, Art. XVI, Sec. 6; *Green v. Chaffee Ditch Co.*, 150 Colo. 91, 371 P.2d 775 (1962); *Sherwood Irrigation Co. v. Vandewark*, 138 Colo. 261, 331 P.2d 810 (1958); *Fort Lyon Canal Co. v. Rocky Ford Canal, Reservoir, Land, Loan & Trust Co.*, 79 Colo. 511, 246 P. 781 (1926); *Nichols v. McIntosh*, 19 Colo. 22, 34 P. 278 (1893); *Fuller v. Swan River Placer Mining Co.*, 12 Colo. 12, 19 P. 836 (1888). A decree of abandonment terminates the water right and divests the owner of any interest in it, thereby rendering the water once again subject to appropriation by the public under Article XVI, Section 5, of the Colorado Constitution. Section 37-92-102(2), C.R.S. 1973; *e.g., Knapp v. Colorado River Water Conservation District*, 131 Colo. 42, 279 P.2d 420 (1955).

 One of the avowed purposes of the Water Right Act is to afford some practicable degree of protection to water rights and uses vested prior to the effective date of the act, June 7, 1969. Section 37-92-102(2)(a), C.R.S. 1973. In view of the finality attaching to a decree of abandonment and the aforementioned legislative policy, the decision of the General Assembly not to include applications for determination of abandonment filed under section 37-92-302(1)(a) from the resume-notice provisions of section 37-92-302(3) is the exercise of a reasonable legislative option.

 Water right records are kept in the name of the diversion or storage structure, rather than by owner name, and water right transfers are not recorded. Harrison and Sandstrom, *The Groundwater-Surface Water Conflict and Recent Colorado Water Legislation,* 43 Colo. L. Rev. 1, 27, n. 95 (1971). An application for determination of abandonment filed under section 37-92-302(1)(a) in most instances would describe the water right by diversion or storage structure, and it is that description which would be included in the monthly resume published in the newspaper. Particularly where the applicant takes under the same source as the putative abandoned interest, or where the applicant's position in relation to unknown owners or their successors in interest is such that the applicant's water right will be enhanced by the decree, it is reasonable to require that the applicant utilize notice procedures more likely to apprise the water right owners or their successors in interest of the pending action than the resume-notice provisions of section 37-92-302(3). We believe this construction of section 37-92-302(1)(a), as excluding applications for determination of abandonment from the resume-notice provision of section 37-92-302(3), is consistent with the presumption that the legislature intended a just and reasonable result. Section 2-4-201(1)(c), C.R.S. 1973.

 The legislative intent not to include applications for determination of abandonment from the notice-resume provisions of section 37-92-302(3) is also apparent from the statutory language employed in section 37-92-302(1)(a). Section 37-92-302(1)(a) expressly authorizes the filing of the following: (1) an application for a determination of a water right or conditional water right, including the amount and priority thereof; (2) an application for a determination with respect to a change of a water right; (3) an application for approval of a plan for augmentation; and (4) an application for a quadrennial finding of reasonable diligence. Each type of application authorized by this section is either expressly defined or described by some other section of the Water Right Act. For example, conditional water rights and water rights are defined in sections 37-92-103(6) and (12). Section 37-92-103(5) defines a change of water right. Section 37-92-103(9) (1979 Supp.) defines a plan for augmentation. And the requirement of a quadrennial showing of reasonable diligence is delineated in section 37-92-601. Considering the overall statutory framework of the

Water Right Act, we believe that the exclusion of applications for determination of abandonment from the notice-resume procedure of section 37-92-302(3) was a purposeful legislative decision.[2]

### III.

The applicants point out that section 37-92-301(2), C.R.S. 1973 (1979 Supp.), expressly authorizes the water referee to make a determination of abandonment "[i]n accordance with procedures specified in this article," and argue therefrom that the Water Right Act contemplates the filing of applications for determination of abandonment under subsection (1)(a) of section 37-92-302. We do not agree with this argument.

The authority of a water judge to determine applications filed under section 37-92-302(1)(a) is readily determinable from the statutory language in that section. Additionally, the authority of the water referee is derivative from, and not greater than, that of the water judge, section 37-92-203(5), C.R.S. 1973. All decisions of the water referee are subject to review by the water judge. Section 37-92-304(5), C.R.S. 1973. The statutory delegation of authority to water referees to make determinations of abandonment is merely a recognition that statements of opposition to an application may be based on the theory of abandonment as an affirmative defense to the application. *See CF&I Steel Corporation v. Purgatoire River Water Conservancy District,* 183 Colo. 135, 515 P.2d 456 (1973).

Applicants also contend that the provisions of section 37-92-302(3)(a), C.R.S. 1973, which direct the water clerk to include in the resume *all* applications filed under subsection 37-92-302(1)(a), thereby expand the types of applications that may be filed under the resume-notice procedures. We reject this contention of the applicants. Section 37-92-302(3)(a) gives ministerial direction to the water clerk with respect to applications filed under subsection (1)(a) of 37-92-302. To adopt the statutory interpretation proposed by the applicants would negate the clear and direct language of section 37-92-302(1)(a).

### IV.

Our construction of the Water Right Act as excluding applications for determination of abandonment under section 37-92-302(1)(a)

---

[2] In other sections of the Water Right Act, the legislature defined abandonment both as to conditional water rights and water rights. Section 37-92-103(1) and (2), C.R.S. 1973. Also, the legislature made express provisions for abandonment determinations by the state engineer pursuant to the tabulation procedure of section 37-92-402, C.R.S. 1973 (1979 Supp.). The state engineer is responsible for the administration and distribution of the waters of the state, section 37-92-301(1), C.R.S. 1973, and has neither a direct nor a proprietary interest in the determination that a particular water right has been abandoned. His interest is a marked contrast from the interest of a water right owner who files an application for a determination of abandonment with respect to the water rights of others taking under the same source. In the latter case the applicant obviously has a direct interest in the outcome, since his own water right will be enhanced by the determination of abandonment.

does not mean that the water judge is without authority to make determinations and enter decrees of abandonment. To the contrary, abandonment of a water right is a water matter within the jurisdiction of the water court. See section 37-92-203(1), C.R.S. 1973; *Perdue v. Fort Lyon Canal,* 184 Colo. 219, 519 P.2d 954 (1974). When an application for a determination of abandonment is filed, the water judge, as here, may require the applicant to make reasonable efforts to determine the identity and location of the owner or the successor in interest, and, if those efforts are successful, to proceed under the pertinent provisions of C.R.C.P. 4 and 19. *See Elk-Rifle Water Co. v. Templeton,* 173 Colo. 438, 484 P.2d 1211 (1971); *Green v. Chaffee Ditch Co., supra.* If the efforts to determine the identity and location of the owner or the successor in interest are unsuccessful, then the applicant may still proceed under the service by publication provision of C.R.C.P. 4(h).[3] *See Hoff v. Armbruster,* 125 Colo. 324, 244 P.2d 1069 (1952).

The judgment is affirmed.

JUSTICE LOHR does not participate.

---

[3] The applicant, of course, can always proceed under the tabulation procedures for determination of abandonment by the division engineer. These procedures are set out in section 37-92-402, C.R.S. 1973 (1979 Supp.).